LAWRENCE YATES v. STATE.

No. A.-9837.   Oct. 1, 1941.

(117 P. 2d 811.)

E. W. Snoddy and A. J. Stevens, both of Alva, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Jess L. Pullen, Asst. Atty. Gen., for defendant in error.

JONES, J.    The defendant, Lawrence Yates, was charged in the district court of Woods county with the crime of assault with a dangerous weapon, was tried, convicted of assault and battery, and sentenced to serve 30 days in the county jail and pay a fine of $75 and costs; and he has appealed to this court.

Counsel for defendant have set forth several assignments of error in their petition in error filed herein, but have consolidated them for the purpose of argument and briefing, and have submitted them to this court as a whole under the proposition that the evidence is insufficient to sustain the judgment.

The defendant was employed as a worker upon the Farley Ranch near Hardtner, Kan.    On November 19, 1939, the defendant was in a cafe in the city of Alva with his employer, Pauline Farley, and two men by the name of Moore and Lyons.    After the meal had been eaten in the cafe, the defendant and Moore walked out of the cafe towards the Farley car.    Two night policemen of the city of Alva saw the defendant as he emerged from the cafe, and accosted the defendant and told him that they had a "pick up" for him, and started to take him to jail.    The defendant asked the officers to allow him to go into the cafe and leave the car keys with the owner, which was done.

After a lapse of a few minutes, the defendant not returning, the officers went into the cafe, and Officer Arnold approached the table where the defendant and the other people were conversing.    The officer asked the defendant to come on and go to jail.    The defendant asked the officer if he had a warrant, and the officer said, "No," but that the sheriff had given him orders to pick him up because of a misdemeanor warrant issued for the defendant as a result of a fist fight with one Whitey Mantz

some time prior. It was then about 10 o'clock on Sunday night. The defendant then asked the policeman if he had a county commission, and the policeman said he did. (The policeman on the witness stand admits making this statement, and that the statement was false). The defendant asked Arnold to allow him to go until Monday morning, that being Sunday night, as he could not make bond until next morning; and Arnold replied that he could not do that, and for the defendant to come along.

The defendant told the officer that he should have a warrant in a case of that kind, and Arnold told him that he did not need any papers to pick him up, and for him to come along. The defendant said that he would not go.

Up to this point in the evidence, there is no substantial dispute between the testimony of the state and that of the defendant.

The testimony of the state was that when the officer insisted that the defendant go along with him to jail, that the defendant reached for a beer bottle and raised it to strike the officer, and that the officer lunged against him, causing the beer bottle to slip out of his hand and fall without striking the officer.

The testimony of the defendant was that the officer demanded that he go along with him to jail; and when the defendant refused to go that the officer drew his blackjack from his pocket and started to strike the defendant, and the defendant reached for the beer bottle. That the neck of the beer bottle was slick, and when the defendant started to raise the beer bottle that it slipped out of his hand.

The testimony of both the state and the defendant was that the policeman was not struck by the beer bottle. When the beer bottle slipped from the defendant's hand

without striking the policeman, the testimony of both the state's and the defendant's witnesses was that the defendant turned and fled from the cafe through the rear door; that the officers started in pursuit, and Officer Cunningham slipped and fell close to the rear door; that Officer Arnold emerged from the rear of the cafe and fired his pistol three times. (The officer swore that he was not trying to hit the defendant.) After the third shot was fired, Officer Arnold yelled for the defendant to stop or he would kill him, and the defendant stopped. Officer Arnold then got hold of the defendant by the arm, and started marching him to the jail; Officer Cunningham approached and took hold of the other arm of the defendant, and defendant jerked his arm loose from Cunningham, whereupon Cunningham pulled out his revolver and struck the defendant over the head, causing a severe scalp wound which bled profusely.

After the defendant was taken to the jail, charges of assault with a dangerous weapon, to wit, a beer bottle, upon the person of Officer Arnold were filed against the defendant.

The policeman testified that at the time they approached the defendant he was not committing any offense in their presence, and that they did not have a warrant for his arrest; but stated that they had seen the warrant in the sheriff's hands. The warrant for the arrest of the defendant for assault and battery upon Whitey Mantz was admitted in evidence, but it discloses that there was no endorsement on the warrant authorizing the officers to serve the same at night.

The defendant presented the following requested instructions at the close of the evidence:

"Instruction No. —

"The jury are instructed that under the laws of this state that an arrest for the commission of a misdemeanor

cannot be made under a warrant, at night, unless by the direction of the magistrate issuing the warrant, indorsed upon the warrant by the magistrate issuing the same, section 2773, Okla. Stats. 1931.

"So that in this case the warrant issued for the defendant by the justice of the peace, Frank Houts, could not be served upon the defendant in the nighttime unless it was indorsed by the said Frank Houts, justice of the peace, authorizing the warrant to be served at night.

"So that if you find that the warrant was not so indorsed by the magistrate; then the officers had no legal right to arrest the defendant under said warrant.

"Offered by the Defendant,

"Refused by the Court,

"Exceptions allowed Defendant.

"J. W. Bird, Judge."

"Instruction No. —

"The jury are instructed that under the laws of this state no officer may arrest a person, without a warrant, for a misdemeanor, unless the misdemeanor is committed in the presence of the officer at the time of making the arrest, and any officer making an arrest for a misdemeanor not committed in his presence is a trespasser, and the person sought to be arrested is not obliged to submit to the arrest, and such an arrest is an illegal one.

"Offered by the Defendant,

"Refused by the Court,

"Exceptions allowed Defendant.

"J. W. Bird, Judge."

"Instruction No. —

"The jury are instructed that a peace officer making an arrest without authority to do so occupies the same relations to the party arrested that any other private citizen would. He is a trespasser who has no right to detain the person, and has no right to prevent an escape, and in preventing an escape he is still a trespasser.

"Offered by the Defendant,

"Refused by the Court,

"Exceptions allowed Defendant.

"J. W. Bird, Judge."

"Instruction No. —

"The jury are instructed that under the laws of this state no officer may arrest a person for a misdemeanor unless the officer making the arrest has a warrant for the person arrested, or attempted to be arrested, for the commission of such misdemeanor, unless the misdemeanor has been committed in the presence of such officer.

"Offered by the Defendant,

"Refused by the Court,

"Exceptions allowed Defendant.

"J. W. Bird, Judge."

There is some repetition in these instructions, but they substantially state the law. No doubt, the learned trial judge thought that he was giving a sufficient statement of the law in instruction No. 4, when he instructed the jury that the officer in attempting to arrest the defendant was acting without the scope of his authority as an officer, and had no right or authority to make the arrest. That part of the instruction is proper as far as it goes; but under the facts herein, in order to fairly present the contentions of the defendant, the requested instructions, with the elimination of the repetitious statements, should have been given.

These officers were trespassers under the law, when they tried to arrest the defendant, without a warrant, for a misdemeanor not committed in their presence, and of which they had no knowledge, except by the hearsay statement of the sheriff. Collegenia v. State, 9 Okla. Cr. 425, 132 P. 375.

Even if they had had manual possession of the warrant for the arrest of the defendant, they could not have served it at night, as it lacked the endorsement of the justice of the peace, which would have authorized its ser-

vice at night. Section 2773, O. S. 1931, 22 Okla. St. Ann. § 189.

The officer testified that he told the defendant that he "did not have to show him anything," when defendant asked to see a warrant or his deputy sheriff's commission. The officer was mistaken, as the defendant was perfectly within his rights when he demanded to see the authority by which the officer was seeking to arrest him, as it is agreed that the defendant at that time was committing no act which would have required or justified his arrest by the officer without a warrant.

The defendant may be a bad man and anxious to fight. It is evident that he had had a fist fight a few days before in Alva with one Whitey Mantz, as the record shows he entered a plea of guilty later to the charge of assault and battery upon Mantz.

But the fact that the defendant may have been wanted for this assault upon Mantz does not give the officers authority to violate with impunity the statutes of Oklahoma.

There was no assault with a dangerous weapon nor battery in this case, as it is conceded that the defendant never touched the officer. Under certain circumstances the defendant could have been guilty of simple assault, which is defined under the statute, section 1865, O. S. 1931, 21 Okla. St. Ann. § 641:

"An assault is any wilful and unlawful attempt or offer with force or violence to do a corporal hurt to another."

Under the undisputed evidence, the officers were trespassers. The defendant had a right to use whatever reasonable means were necessary to resist this unlawful trespass against his person. The striking of the defendant

over the head with a pistol by Officer Cunningham was wholly uncalled for under any view of the evidence, and was such an attack as should have been condemned by the county attorney. It is proper for county attorneys to uphold officers in their vigorous and prompt enforcement of the criminal laws; but it is not their duty to condone their acts when they purposely commit some act not in line with their duty as officers. The defendant was peaceably proceeding to jail with Officer Arnold, when Cunningham hit him over the head with his gun.

It would seem from the record that this prosecution against the defendant was instituted in an effort to try to justify the unlawful action taken by these officers.

If we were to uphold a conviction in this case under the record, it would result in submitting all persons to any indignity or assault that an arresting officer might see fit to heap upon them. People chosen to enforce the law should obey the law themselves.

For the reasons hereinabove stated, it is apparent that no conviction of the defendant should have been sustained; acordingly, the judgment of the district court of Woods county is reversed, and the defendant ordered discharged.

BAREFOOT, P. J., and DOYLE, J., concur.