## GRADY COATS v. STATE.

No. A-10416. May 31, 1945.

(159 P. 2d 271.)

4

Jerome C. Sullivan, of Duncan, for plaintiff in error.

Randell S. Cobb, Atty. Gen., and Jess L. Pullen, Asst. Atty. Gen., for defendant in error.

JONES, J. The defendant, Grady Coats, was charged by information filed in the district court of Stephens county with the crime of assault with intent to kill; a jury was waived, the defendant was tried, found guilty of the included offense of assault with a dangerous weapon,

and was sentenced to serve one year in the State Penitentiary, and has appealed.

The defendant is alleged to have committed an assault upon L. L. Losson, chief of police of Comanche, at a time when the chief of police was allegedly attempting to place the said defendant in the city jail, upon complaint having been made to him that the defendant had had an altercation with one Armstrong.

It is contended by the defendant that the attempted arrest by Officer Losson was unlawful, therefore, the officer was a trespasser and the defendant was justified in using whatever means was necessary to free himself from the unlawful trespass. Yates v. State, 73 Okla. Cr. 51, 117 P. 2d 811, and Collegenia v. State, 9 Okla. Cr. 425, 132 P. 375, are relied upon by defendant to support this contention.

L. L. Losson, the prosecuting witness, testified that he was the chief of police of the town of Comanche. That he arrested defendant about 9 or 10 o'clock, p. m., at a domino parlor on March 25, 1942. That he did not have any warrant for defendant's arrest. That one of the businessmen of the town of Comanche, by the name of Armstrong, had come to him and advised him that the defendant had come into his place of business and threatened to "cut Armstrong's guts out." On objection being made by counsel for defendant, the court did not allow the witness to detail the things that had been related to him by Armstrong which the defendant allegedly had done in Armstrong's place of business. At the time of the arrest of the defendant, he had been drinking intoxicating liquor and was showing its effects. The defendant proceeded with Losson to the city jail. At the entrance to the jail, Losson took the keys to the jail from his pocket and started

to unlock the jail door. At that point, the defendant seized Losson's gun and stepped back about three feet. Losson made a lunge for the defendant with a billy club and struck defendant over the head with the club. That defendant fired Losson's gun twice—one of the shots going through Losson's hat, and another hitting Losson in the foot. That he struck the defendant several times with his billy club and the defendant hit him over the head twice with Losson's gun. That the defendant finally turned and ran. The officer further testified that he went to the hospital for medical attention and received medical treatment daily for six weeks for the injuries he sustained in the altercation. That when defendant first grabbed the officer's gun, he stepped back and said, "——— ——— you, I'll just kill you." That when defendant made this statement, the officer lunged at him and defendant fired the gun once. That he then attempted to fire it a second time, but the gun jammed. That he heard the trigger click. That defendant then fired a third shot.

Dr. A. J. Weedn, a witness for the state and who owned the Weedn Hospital, testified that he treated the witness Losson for the wounds he received for about two months. That Losson had a laceration on his scalp about three inches long. That he also had other injuries, including a hole in his foot allegedly caused by a bullet.

M. D. Armstrong testified that he operated a cafe and service station in Comanche. That on the night of March 25, 1942, the defendant was in his place of business. That he had trouble with the defendant. When asked to detail the nature of the trouble which he had with the defendant, counsel for the defendant objected and the court sustained his objection. The court did allow him to testify that he related what had happened to Losson, the chief of police.

The defendant testified that when Losson came to the domino parlor where he was playing dominoes, he stated, "Come on, Dug, let's go." That he asked Losson what he wanted him for, and Losson stated, "Fighting and jumping on that boy up on the corner." That defendant paid the proprietor for the game of dominoes, and started to the city jail with Losson. That on the way to the jail, the witness Losson asked, "Why did you draw a knife on that boy?", and the defendant replied, "I didn't draw any knife." That when he said this, Losson called him a "lying son-of-a-bitch", and struck him over the head with his pistol. That Losson struck him several times with the pistol before he could grab it. That while they were scuffling over the gun, it went off a couple of times. That he was grabbing for the gun to keep the witness from striking him with it. That he did not grab the gun with the intention of shooting Losson, but to keep the witness Losson from shooting him. That after he grabbed the gun, Losson struck him with a black jack and he struck Losson on the head with the gun in self-defense. That he finally knocked Losson on the ground with the gun and after doing this, he threw the pistol away and left. That he was bleeding badly. That he was taken to the Patterson Hospital that night, where his head was dressed. On cross-examination, the defendant admitted a former conviction for the crime of larceny and that he had served a term in the Penitentiary because of said conviction. He further testified that he was not trying to prevent Losson from taking him to jail when the altercation occurred, but that the trouble all started because Losson struck him over the head with a gun when he denied having pulled a knife on Armstrong. The witness was then asked the following question:

"Q. Were you drunk or weren't you? to which he answered, "I don't remember."

Several questions were then asked the defendant about whether he was drinking that night, making trouble in general, and cursing officers, to which the defendant either answered "No," or stated, "I don't remember."

The other witnesses that testified both for the state and the defendant described the nature of their respective wounds.

The witness Stewart testified that he was the officer who arrested the defendant the night of the altercation at defendant's home. That the defendant was bloody and had been drinking. That he could smell liquor on his breath. That defendant went with him and showed him where Losson's gun was laying by a telephone post near the city jail.

22 O. S. 1941 § 196 provides the law pertaining to arrests by a peace officer without a warrant as follows:

"A peace officer may, without a warrant, arrest a person:

"1. For a public offense, committed or attempted in his presence.

"2. When the person arrested has committed a felony, although not in his presence.

"3. When a felony has in fact been committed, and he has reasonable cause for believing the person arrested to have committed it.

"4. On a charge, made upon reasonable cause, of the commission of a felony by the party arrested."

In Yates v. State, supra, it is held:

"No officer may arrest a person without a warrant for a misdemeanor, unless the misdemeanor is committed in the presence of the officer; and any officer making an arrest, without a warrant, for a misdemeanor not com-

mitted in his presence is a trespasser who has no right to detain the person sought to be arrested."

In the Yates case, the undisputed facts showed that a misdemeanor warrant had been issued for Yates for a misdemeanor allegedly committed some time previous to his arrest. The arresting officer did not have the warrant. Yates was committing no offense in the presence of the officer and refused to accompany him to jail, unless the officer would procure a warrant for his arrest.

In the instant case, counsel for defendant objected to the witness Armstrong relating the acts committed by defendant at his place of business. For that reason, we do not know whether the defendant committed a felony therein. It does appear from some of the answers that were given by the defendant himself in his testimony that he is alleged to have drawn a knife on Armstrong and threatened to cut him. Just what else was said and done by the defendant on that occasion is not disclosed. When counsel for defendant made an issue of the question as to whether the witness Losson had a lawful ground for the arrest of the defendant, the court should have allowed the witness Armstrong to have related what occurred in his cafe between himself and the defendant. Defendant may not object to the state's making a showing as to the acts complained of, allegedly committed by defendant as a basis for his arrest, and then, later, contend before this court that no crime had been committed which would justify the arrest of the defendant without a warrant.

In the fourth subdivision of 22 O. S. 1941 § 196, supra, it is provided that a peace officer may arrest a person without a warrant on a charge made upon reasonable cause of the commission of a felony by the party arrested.

In addition to the question as to whether a felony had been committed by the defendant, authorizing his arrest without a warrant, there is some testimony that defendant was under the influence of intoxicating liquor to such an extent as might have justified his arrest for being intoxicated in a public place.

There are other facts which distinguish this case from the Yates case. In the instant case, according to the testimony of both defendant and the officer, the defendant started peacefully on his way to the jail with the officer. The alleged assault did not occur because of a protest which the defendant was making to the purported improper arrest without a warrant. The defendant did not interpose as his defense that he was resisting an unlawful trespass against his person when he struck the blow and fired the shot which caused the injuries to the officer. His contention was that the officer had started the affray by striking him over the head with his pistol and that he, the defendant, performed the acts which he did in his own necessary self-defense to prevent the officer from either killing him or inflicting serious bodily injuries on him.

A jury was waived and the cause was tried to the court. The injuries sustained by the defendant were almost as serious as those sustained by the officer, and although defendant's story conflicts with the testimony of the officer, we are somewhat impressed by the argument presented by the defendant's counsel as to the truthfulness of this testimony, still, this conflict in the evidence presented an issue for the determination of the trial court. He saw the nature of the wounds which were inflicted, he heard the testimony of the witnesses and saw their demeanor on the witness stand, and it is

not within the province of this court, under such circumstances, to interfere with the verdict.

The judgment of the district court of Stephens county is accordingly affirmed.

BAREFOOT, P. J., concurs. DOYLE, J., not participating.